All set? Okay. Please proceed. Your Honors, my name is Eugene Wallach. I represent Defendant Crystal Cox. The day after trial, on November 30th, the district judge issued a detailed opinion responding to a defendant's First Amendment arguments and disposing of them. In the process, the judge made four First Amendment errors. The first is the district court concluded that the protections of Gertz and Robert Welch are only available to the institutional media and not as to individual bloggers and other speakers who post online. That, we contend, is not correct. It is not consistent with Citizens United, which specifically held that the court has repeatedly stated that Let's just say hypothetically, counsel, that I agree with you about Gertz and that it does apply in this situation. What I'm struggling with is this gentleman a public figure in the sense that there has to be a showing to the level of a New York Times versus Sullivan in terms of actual malice. Help me with that. Why is this person, Cox, a public figure? And I take it, let me get into this question, because as I take it from this record, you're only contending he's a public official. Yes, Your Honor. That is correct. But we argue that Kevin Padraic is essentially a limited-purpose public official. Even if he is not such a public official, nonetheless, actual malice has to be shown under Gertz for purposes of showing presumed damages. First of all, is there such a thing as a limited-purpose public official? Your Honor, yes. We believe this is so because there are certain circumstances in which a person is appointed to exercise a post of significant authority and discretion for a limited purpose. And we have three cases on this, all State appellate court cases, Harrison, Bandolin and Young. Young is the most recent one from the California Court of Appeal. And they involve, for example, court-appointed psychologists who would review matters in child custody cases. But in each of those cases, one of the difficulties I'm having with the public official argument here is I'm trying to figure out how the trustee is different than a debtor in possession, how he has any additional authority other than that of a debtor in possession in the Chapter 7 case. In other words, what the trustee does is he acts in the stead of the debtor to collect the debtor's assets, perhaps to propose a plan of reorganization, but it's only a proposal. Why is he any more a public official than a debtor in possession would be in these cases? Your Honor, we believe it's for the same reason that a court-appointed guardian or a court-appointed conservator But those people are exercising governmental powers. A court-appointed conservator is in the stead of the court, telling the person for whom he is acting as a conservator, you must do this or doing things on that person's behalf in the court's stead, as would be the psychologist in the case who is making a decision about custody. Here, what governmental powers is the trustee exercising? Your Honor, the trustee is appointed pursuant to a court order. But so are CJA counsel. Yes, Your Honor. As to private counsel for private individuals, the matter might be different, for example. But here, isn't his fee being paid from the debtor's estate? Your Honor, that is correct. But he is nonetheless appointed by a U.S. trustee pursuant to the court. So is the court clerk. The court clerk has a similar judicial immunity, even paid by the court. But would you argue that a court clerk in this setting would be a limited-purpose public official? Your Honor, a court clerk, as we understand it, important as the job is, does not exercise the same kind of discretionary authority over people's property. But tell me how the discretionary authority being exercised here by the trustee is any different than the authority than a debtor in possession. I don't think we call a debtor in possession a public official. Correct? Yes, Your Honor, that's right. So what different authority does this trustee have than a debtor in possession? Well, Your Honor, we think that this stems from a combination of the powers that he exercises and his role as an appointee of the government through the process of the U.S. trustee's office and the court, which is one reason, for example, that the trustee does have judicial immunity, which is something that a typical debtor in possession does not. So the law recognizes there's a difference in those roles. One of the things that the Supreme Court, at least arguably, was concerned about in Gertz and the reason why they limited the liability of the lawyer in that case was that unlike a public official or somebody that had access to the media to kind of respond on his or her own, they felt that the lawyer in that case who represented an accused or somebody suing an accused murderer, a policeman, that he didn't have similar ability that a public official would have to respond to allegations that were lies or misrepresentations. How does that play into this case? I mean, a bankruptcy trustee works under the U.S. trustee. They're appointed. They don't have a lot of discretion. They certainly don't have the ability to go out and just talk to the media whenever they want to. They'll lose their job. They're not elected. Help me with why there is such a thing as a limited public official in this setting. Yes, Your Honor. For public figure status, one of the factors that the court pointed to in Gertz was a public figure's ability to access the media. That is not what the court has stressed with regard to public officials. And, in fact, there are many lower court cases that hold that, for example, police officers are public officials because of the discretionary authority that they exercise, even though the typical officer would not. Tell me, again, what discretionary authority the trustee has. Well, as I understand it, the trustee can manage the assets of the estate pursuant to court appointment and has judicial immunity as a consequence of that court-slash-U.S. trustee's appointment. Your Honor, in that respect, we think that this is actually quite like the guardian and the conservator. The guardian's and conservator's job is likewise to, in a sense, stand in the shoes of the conservatee or the person for whom the guardianship is. But what we have on that are two state court decisions, right? Your Honor, that is correct. We have two state court decisions on that and a state court decision with regard to a court-appointed psychologist. Can we return to the Gertz side of the case for a moment? And I'm interested in the procedural posture of this case. Let's assume that you preserved the arguments you made here below. You're only seeking a new trial, correct? Yes, Your Honor. And at that new trial, if you prevail, should the jury be instructed that these statements have already been found to be false? Your Honor, that is not a matter that has been briefed. There has been, in fact, however, a jury trial finding on that, so the question is whether. Yes, but I'm asking what relief you're seeking. So whether or not it's been briefed, it seems to me the relief you're seeking, I want to see if I'm wrong, is a new trial at which the issues of fault, whatever the appropriate level of fault, whether it be negligence or something higher, and the issue of damages are addressed, but not a new trial at which the issue of falsity is addressed. Is that a fair statement of what you seek? Your Honor, we believe we are entitled, as a First Amendment matter, to a new – I'm sorry. Your Honor, yes, we are seeking that. We believe that we are entitled to such a trial. Okay. We're unaware that there's a procedure for this kind of remand for trial on that limited matter. So it may be procedurally inavailable. But as a constitutional matter, we believe we're entitled to, assuming Gertz and not mere time to use it. Your Honor, you're not contending that your client didn't get a fair trial on the issue of falsity? No, Your Honor, we are not. Okay. Now, as to Gertz, assuming that it's not limited to the institutional media for a moment, one of the things that concerns me is the issue of public concern, which is what Gertz requires. And, again, let's assume that this Court hasn't held that in private-private disputes, Gertz applies. There's a footnote in the case that's subjective, but let's assume that a public concern is required in order for Gertz to be triggered, a matter of public concern. Can the author turn something that wasn't a matter of public concern into a matter of public concern? Yes, Your Honor, we believe so. We believe that the question of public concern has to do with whether this is the sort of subject that the public may be concerned about, without regard to whether there's a preexisting controversy. There are two cases. But doesn't Gertz itself respond to that? There was an allegation, was there not, that this lawyer, because he was representing this family, had in fact become part of the controversy and, therefore, the whole New York Times battery of defenses was available, and the Supreme Court said no. How does that apply here? Yes, Your Honor, it does apply here, and we think it cuts in our favor, assuming for a moment that this is not a New York Times v. Sullivan case, that in Gertz the Court said that the lawyer was not a public figure. We think it's a matter of public concern to determine whether somebody is a public figure, either an unlimited purpose public figure or under the pervasive fame and notoriety prong of public figure status. There has to be a preexisting controversy. Right. But that's a different test than whether something's a matter of public concern. Exactly, Your Honor. But I still ‑‑ there's something slightly troublesome about a set of events that nobody in the public really cares about that are turned into a set of events in the public that somebody cares about because somebody posts a false statement on the Internet, and then we say, well, it's a matter of public concern. So I want to avoid that chicken and egg problem. Tell me how I do it here. Well, Your Honor, we believe that, in fact, regardless of if there's a preexisting controversy, allegations of certain kinds of misconduct are matters of public concern. And there are two reasons why this is so. One is the precedence of the score. For example, the clearest ones are Gardner v. Martino in Manufactured Home Communities v. County of San Diego, which involved not even allegations of crime, but allegations of ‑‑ one involved allegations of a small business store owner's refusal to give a refund on a recreational product. Another involved allegedly excessive rent charged by a mobile home park operator. Nothing in those cases which treated this as each a matter of public concern suggests there was a preexisting controversy. And the second reason is that the plaintiffs, the plaintiffs in those cases, were not dealing with the public at large. Weren't the defendants in those cases, or the plaintiffs in those cases, I'm sorry, dealing with the public at large? Your Honor, it is true that in those cases the defendants ‑‑ excuse me, you're right. The plaintiffs ‑‑ We both got it wrong. ‑‑ were business people who dealt with the public. Here, the plaintiff is a business person who is dealing with, in a sense, the public fisc. The allegation, to be sure, one that was found by the jury not to be sound, but the allegation was the defendant was defrauding the federal treasury. If it's a matter of public concern that someone isn't giving a refund to a customer or perhaps some other customers as well, it would be likewise a matter of public concern that somebody is committing a federal crime against the public treasury. As to the public figure and the public concern statistic, it seems to us that it fits in the following way. If there's a preexisting controversy about the plaintiff, he's already going to be a public figure on this, generally speaking, at least in many situations, on this limited purpose public figure theory. So it is precisely when there's no preexisting controversy into which the plaintiff has been involved, has been sucked in, where you've got a public matter that is about a private figure, but potentially a public concern. Your Honor, you frown. Well, yeah, I understand what you're saying, and it seems to me the more compelling argument on your side is that this involves a public proceeding, and therefore it should be a matter of public concern. But I'm a little bit bothered by the notion that the public at large ought to be concerned about this because it involves allegations of fraud, and therefore making false allegations of fraud are okay. But let me run to something different. Why is Obsidian, in your view, a public figure or a public official? Your Honor, we believe that Obsidian ought to be treated with the same status as Kevin Patrick, who's a one-half partner. Mr. Patrick was appointed to his position because of his role in Obsidian. And when one is speaking out... So do we have derivative, limited-purpose public officials now? Your Honor, I've tried to find cases on this point. I have found none on either side. So what we believe is that one way of looking at it is looking to the purposes of the public official doctrine, that people ought to have freedom to speak about public officials, not, of course, with impunity entirely, but subject to the heightened protections offered by New York Times v. Sullivan. To the extent that's so, then speech about people who are public officials, whether general or specific purpose or specific event public officials, will very often involve commentary on the business that they are one-half partner in that were the cause of their appointment. Well, there's another partner in this corporation who I take it this record demonstrates have nothing to do with this adventure, if you will. Yes, Your Honor. He had had his own private claim as an individual plaintiff. Right. But let's assume for a second that the record establishes that you have a... Mr. Patrick had a partner who had nothing to do with this bankruptcy. And your client defamed him. Would he be a public official for purposes of this? I'm sorry, would the... I forget the partner. The partner. I forget the partner's name. The innocent partner. Let's call him the innocent partner. Is he a public official? Your Honor, I would be inclined to say not. But the business in which the plaintiff is a one-half partner in, and it was his role in that business that brought him to the attention of the court and the trustees, would, Your Honor, be as legitimate of a target for criticism and for commentary as the plaintiff himself. Does the record in this case indicate whether, and I couldn't tell this, whether obsidian shares in the fees that Mr. Patrick would get as trustee, or is this something that only goes to him? Your Honor, I'm unaware of anything specific in the record. But my understanding is that he was appointed in his role as a partner, which I would assume under partnership law would mean that there's this partnership asset. But I cannot specifically point to that. You know, I've got to say, I'm very troubled by your argument on this point. It's a bottomless pit. It eats up the entire exemption that seemed in my mind to be created by Gertz. It seems like you're saying that if there's this big hole into which people can fall, and if you're anywhere close to it, you know, you're not protected by Gertz. You are part of the controversy. Therefore, we treat you as a limited-purpose public figure or a public official, perhaps, even in this particular case. How do we cap them, this concept? That's what I don't understand. How does it get capped? Your Honor, so this would only apply to situations where somebody is otherwise either a public official, could be even a general public official, but one who's, for example, part-time a public official and part-time still carries on some sort of business practice. For example, a state legislator, many states' legislators. Well, clearly, they're covered. But they're elected. But here you've got a private lawyer who the U.S. trustee hires him. He gets engaged to basically oversee for the benefit of the U.S. trustee's office and the people the affairs of a private company. He gets paid by the private company. There's absolutely nothing that the public in general has anything to do with on this unless, in this case, your client makes some allegations that suddenly makes what was otherwise not an issue at all into a public issue. It turns out, according to the jury, the information that was alleged was false, totally false. So you're saying that somebody in this situation, which could involve any lawyer, just like Gertz was, suddenly he gets sucked into the vortex. I'd like to know, from your perspective, if we agree with your concept here that this man is not protected, then where does it stop? Is there anybody who couldn't be made into a public figure under your concept? Your Honor, our view of public figure status in this case comes from this person having been appointed to this important position by a judge, by the trustee and the judge, and being under the supervision of the legal system and enjoying judicial immunity. That is a very small set of people we are. So you're saying that the court clerk would likewise be a public figure? And, Your Honor, somebody who's in this position, a position where he can dispose of the assets of... Courts do it all the time. Our courts dispose of all kinds of things that clearly don't have jurisdiction, filed late, whatever. They exercise their discretion on that. So they're covered under your circumstance. Your Honor, we don't think that they have the same kind of... I don't know why you're resisting. I don't know why you're resisting this. Why shouldn't a court clerk be a public official for purposes of their performance of their official duties? Your Honor, it is possible that might be so. We... It seems to me they're more clearly public officials than the bankruptcy trustee. Well, Your Honor, if you believe that they are public officials, then we would be happy to agree to that. But we think that even if you think they're not public officials, then in that case the trustee who has this extra discretion over the disposal of the estate is one. If I may disclose, Your Honor, even if you disagree with us on Sullivan, there still would need to be a new trial under Gertz in which actual malice has to be shown as sufficient. Can we just stop there? Okay, great. Let's hear from the other side. Good morning, Your Honor. May it please the Court. Steven Walker for Kevin Patrick and Obsidian. I think we need to step back. This case is about a case that went to trial in which the uniform civil jury instruction for the State of Oregon on a state law claim of trident diversity was given. There was no objection. There was no alternative instruction offered. Under Rule 51, the objections are essentially waived. And the only thing this Court can do and the only thing the Court below could do at the time of the motion for new trial was to determine whether there had been a plain error. And I think the discussion we've heard already this morning demonstrates that if there were any error here, and we don't think there was, but if there were any error, it could not be plain given the multiple differing interpretations that courts around the country, state courts, federal courts, have put on these issues. As I read this record, I am left with no doubt whatsoever about what the trial judge thought about whether or not Ms. Cox was either a member of the institutional media, whether or not this was a matter of public concern, and whether or not Mr. Patrick was a public official. The trial judge made that as commendably as clear as it possibly could be. Under those circumstances, why aren't these issues all preserved for appeal? I think it's important to reflect that we have an adversarial process for a reason. And if every time we decided that because we think the judge had made a mistake. Well, it's not just think. The judge said so. Well, but he didn't. Because if you look at the new trial order, the new trial order says, this is a new argument, this public official argument. This is not an argument I understood this defendant to be making. So that's a significant new argument. But he did understand the defendant to be making the Gertz arguments. In part, the Gertz argument, he discerned, although not from anything else. But she was pro se and did a pretty bad job. Yeah, but she was pro se. But she also knew how to file motions. She knew how to submit exhibits. She knew how to file a trial memorandum. Whether she did as good a job as she might have, she did a job in doing her best to comply with the rules. So go back to the trial memorandum. To me, that, if you had filed it, I would say it preserved your Gertz arguments. Don't you think the trial memorandum preserved the Gertz arguments at least? Well, I would think, I think you could make that argument if, in fact, she had presented and said, at least what you have to do is instruct on negligence. But she doesn't even say that. Her argument entirely was, I'm meeting, I'm meeting, New York Times applies, he's a public figure. Post-trial, the argument is a different argument. The argument is, and the judge discerned, well, maybe she means this is a matter of public concern, and therefore, under Dun & Bradstreet's holding, it doesn't fit, you know, the question is, does it fit within what's left of private, private defamation claims under Dun & Bradstreet? Because we know from Dun & Bradstreet that a private, private claim was allowed to proceed without a finding of negligence. Can I come back to the jury instruction issue? You asked whether there was any plain error. And as I look at it, anyway, there was a plain error because the jury was not instructed that it couldn't impose liability for defamation unless it found that Cox acted at least negligently. Because Gertz clearly applies to non-institutional media. Don't you agree with that? I don't agree with that. Oh, you don't? Why is that? What Gertz says, what Gertz says is, in the context of institutional media, broadcast or press, that's what it decides. And every time the court was asked to decide that issue after that, in Hepps, the court said, we expressly decline to do that. In Milkovich, just a couple of years later, we expressly decline to make that distinction. To be sure, the court is never directly addressed in a defamation case whether or not it's limited to institutional media. But luckily, we're not here in HEDPA, so we don't need a Supreme Court decision directly on point. And we do have five members of the court in Dun & Bradstreet, and we do have, in a different context, to be sure, in the citizens' case, the court saying, members of the media don't have any more First Amendment rights than members of the public at large. It doesn't, since we're supposed to predict where the Supreme Court's going here rather than. You're doing a great job of that. Yeah. Doesn't that give us a pretty good hint that they, that's where they are? It may give you a hint of where they might go, but it doesn't tell you what the law is now. And what we know is when the court has been presented with the issue that's before you about whether GERTS applies to everyone, it's expressly declined to do that. But their declination doesn't tell us the opposite. It just tells us that it's open to you little guys to figure out what the law is here. The fact that it's open suggests that it's not a plain error, because when given the opportunity to decide precisely the issue that they're asking, the court's declined to decide it because it didn't need to. So to suggest that our trial judge should have discerned that that's what they would have done when presented with the case, even though the argument wasn't presented below and didn't otherwise comply with the requirements for jury instruction, that he should have discerned that this is what the law in fact is. Would you agree that if this panel concluded that GERTS clearly applies to nonprofessional media publishers, that that would meet the plain error standard which would permit us to reverse this case, send it back on that issue, not necessarily the other issue, but on that issue? If you conclude that GERTS plainly applies and that it was incompetent for the trial court not to apply, which I'd still take issue with given the Oregon authority on point, which does recognize the distinction, and this was a State law claim, but the Oregon Supreme Court has recognized the distinction between media and nonmedia. I would also, just before I make a concession, I want to be clear. The Reporters' Committee for Freedom of the Press brief suggests that this is an open question, that the application of GERTS beyond the institutional media is an open question. It's not been decided. And Citizens United didn't decide it. Citizens United cited to a dissenting opinion. Clearly, the dissent in Austin didn't decide it. It cited to two sides of an opinion. What does it mean when the majority cites a dissenting opinion with approval? What they said was the Supreme Court has, in quotes, consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers. That's what Kennedy cited in the majority opinion. Citing Justice Scalia. Well, first he's citing Justice Scalia. Who then cited Brendan White, yes. Which is quite unusual. Which doesn't decide an issue in the context of a defamation case. It's part of the reasoning for why they reject the application, why they reject Congress's attempt to create a separate classification, which is a far different circumstance than what we have in the area of the law of defamation, where the Court has encroached on an area traditionally left to the states, and until 1964, purely left to the states. Well, I appreciate your plain error argument, but let's take this out of the plain error context for a moment. Let's assume that the issue is in front of us, without plain error review, of whether or not Gertz only applies to the institutional media. How should we resolve that issue? I think you should say that Gertz only applies to the institutional media. For reasons that Gertz, because what is the constitutional value of the speech here? That's what the Court was focusing on in Gertz. In Gertz, the Court was focusing on the constitutional value of the speech and giving the broadcast media the leeway to report. What the plaintiff here, what the defendant here was doing was standing on the corner, in this case on the Internet, yelling bad things about my client, accusing him of criminal conduct. But what's the constitutional value of that? And when asked to stop, her response was, in her words, flip it. Let's assume she's a bad person, and that's not the issue here. The issue here is whether or not we limit Gertz to the institutional media, as you say, and if so, define the institutional media for me. Again, I do think that it's limited to those engaged in the dissemination of news to the public, in the context of what we traditionally understand news to be. So the Internet is or is not the Internet? I mean, I would separate the falsity of the news in this case from the dissemination. I think the problem is that the balancing aspect that has to be done here, it's not that the medium is the problem. It's not that the Internet doesn't make it news. There can be news on the Internet, but there has to be some semblance of that this is, in fact, news, as opposed to this is, in fact, essentially a personal rant. So do you have to have, on other occasions, published something that was accurate? I think you have to have done something that would suggest that what you're publishing is news. It's information for use of the public. But aren't you forgetting the whole history of our wonderful republic? Virtually every newspaper in those days was a professional political rant. Each party had its own political papers, and that's where people got their information. And they said all kinds of horrible things, but they were, in quotes, newspapers. It can't be based upon what you were talking about. But this was not a political rant, and this was not political speech. This was a personal attack. I picked that out as what was happening in those days. Some of them were just personal, and they would accuse people of being, in those days it was illegal, adulterers and all kinds of things, and, you know, just done with impunity. But there were different ñ and the Supreme Court has recognized that there are different categories of speech for purposes of the First Amendment. There's political speech, which is at its height. That's what was at issue with Citizens United. There's commercial speech, which gets less protection. There's indecent speech, which gets even less protection. But that turns on the nature of the speech. My question is, does it turn on the nature of the speaker? Well, the nature of the speaker influences the nature of the speech in this context, because this is not political speech. This is not even a commercial speech. This is a personal attack, and we know from what's in the record that, you know, whatever media may be, whatever the institution may be, we know the news media doesn't offer to stop publishing if you just pay a small fee. That's not media. That's extortion. Extortion isn't protected by the First Amendment. Fighting words aren't protected. True threats aren't protected. There's no reason why this speech in this context should be protected by the First Amendment or should get any deference from this Court for this speaker. But, again, you're talking about the nature of the speech, and I appreciate that. I mean, this is by all accounts, in this case, completely irresponsible conduct and perhaps done with actual malice. But I'm still trying to find what the basis, if we're to say, as you suggest, the institutional media are the only ones entitled to Gertz protection, tell me how in the next case I define the institutional media. It can't be because of what they said, because we never get a defamation case up here unless they said something false. So tell me how I define the institutional media. It's not that the statement was false. It's not the falsity of the statement. Even if it was scurrilous, how do I define the institutional media? The institutional media occasionally makes scurrilous statements. Clearly. And the institutional media has, when we talk about what we think of as the press and as the institutional media, we have editors. We have folks who are involved in the process of vetting the news who determine. . . Oh, that's what the Supreme Court talked about in some of its cases. Some were saying, well, these people are checked for facts and all that sort of thing. That doesn't happen so much now. Like 11 percent of the population reads newspapers these days. They mainly read stuff on the Internet. And a lot of it's not filtered and so on. Does all of that go out the window because it's not published by the New York Times or the LA Times or the Argonian? I don't know whether it does or it doesn't, but what we don't know is what's . . . Even if you accept what you're pushing me to accept, which is that everybody's entitled to the same . . . I'm trying to figure out what the limiting principle is here. What we also don't know, and we don't know this precisely because of the differing views of the justices, is we don't know what that protection is. As Judge Fernandez pointed out, what we know from Dunn and Bradstreet is that Justice White agrees there should be no differential protection. He agrees with Justice Brennan. But they don't agree on what the results should be, right? I mean, if they agreed on what the results should have been, Justice White would have voted with Justice Brennan or vice versa, and there would have been a majority either that there's no protection or there's lots of protection. So we're trying to be better than the Supreme Court. Yeah. Hopefully we're going to reach a majority opinion on an issue here and provide some guidance. So I'm trying to figure out how I provide that guidance without figuring out how I separate the institutional media from the non-institutional media. And I think part of what you have to look at is the context in which this case arises, and is this the case that requires this Court to do that where there's been such a failure? And I want to point out that one of the things you ask is what do we do? Assuming you disagree with my argument, what do you do? Do you reverse? And I suggest to you don't. That you still have to have an error that affected the substantial rights of the plaintiff. There has to have been until the defendant. There has to have been something that makes this error not harmless. And how could this, assuming, just assuming arguendo, that Gertz applies and there has to be at least a showing of negligence, that there was no such instruction here. Now, your client may have gone well beyond may indeed satisfy the New York Times requirements. I don't know. But isn't that something that the jury ought to decide based upon a proper standard if Gertz applies here? In an ordinary case, if there were a close question, the answer would be yes. But this is not a close case, and it's not a close question. The evidence was uniform and one-sided. The defendant did nothing to check. The defendant didn't know whether her story was true or false. So are you suggesting that we dodge the issue of whether this woman is covered and just assume for a moment that she is and just determine that this was false, that it was actual malice and it's done? Is that what you're suggesting? I think if the first part of the holding is I disagree that actual malice is required here. What would be required under your scenario? Well, under your scenario, but your side of it. This scenario is nothing. But what I think you're positing is that this was a matter of public concern at some level and therefore at least a minimum showing of negligence was necessary. And I would suggest to the Court that on the record before the Court, there is no evidence. The only evidence is abundantly clear that she was at the very least negligent. Although under that setting, you would suggest that we take what the jury found and say this clearly meant that there's no point in sending it back, even applying the end quote proper standard, the case is over because she meant that sentence. Correct. Because there's no error affecting the substantial right of the defendant. Well, but here's my difficulty with that. Whenever you think about preserving these issues for appeal, surely Ms. Cox was told before the trial began that no false showing would be required. The judge did indicate that to her. Right. And she put on no case. She put on no case, but she did. Well, hadn't she been told that any showing that tended to vitiate her fault would be irrelevant? Well, she wasn't told that any showing that tended to establish the truth of the statement. No, I understand. I'm assuming the statement is false. I'm assuming for purposes of remand that the statement is false. My question is, once having been told by the judge that we don't care whether you were at fault or not, other than the fact that the statement was false, once having been told that, it's hard to fault her for not putting on any evidence about the level of fault. Right. But what she's seeking to do here, and I think we need to step back, is the pre-trial order, or the order that came out the day after trial, but reflects what everybody was told. Indeed. And as the record demonstrates, Ms. Cox failed and refused to produce documents. She failed to refuse to participate and claimed a privilege from having to do so, and now seeks to defend her conduct on the ground through counsel that she wasn't negligent or that she didn't comply. And again, I take as given here that she's not a likable person. My question is a little bit different, which is that if the judge had said to her, you do have a defense in this case, you can prove to me that you weren't negligent in publishing it, can we assume from this record that she wouldn't have tried to prove that she wasn't negligent? I don't know that we can assume that. See, if we can find something harmless, it seems to me that that's a requisite for me. But her testimony, her deposition testimony, which was introduced, demonstrates what she did, and she can't contradict that evidence because it's her own testimony about what she knew and didn't know. So whether she might have tried to offer something else, how could she contradict her own statements that she did nothing to check the information, that she did nothing, that she didn't know whether it was true and false, that when she was asked to take the posts down, her response was flippant, and then she reposted more? I mean, this is not an indication of anything that would suggest a lack of negligence here. Can you address, because you only have a little bit of time left, can you address the awards in this case? They're both – we don't know whether they're actual damages or presumed damages because you did put in some evidence of actual damages. We put in quite a bit of evidence of actual damages. But the other side says the awards are excessive. I'm having some trouble figuring out what they're based on. Tell me how you defend the awards. As we set forth in the brief, the awards are based on the evidence presented about the loss of business, the loss of opportunities in terms of the individual. And I want to just point out that obsidian is not Mr. Padraic. Obsidian has separate rights here. And without – with running out of time, I did want to say that there's no evidence, there's no law that suggests that its claims should have any subject possibility of reversal based on the arguments that are made here for the reasons you discussed. Well, at least that's the public official. I'm sorry? At least that's the public official. Yes. Okay. But why the different amounts – were there different amounts of damages proved up for the corporation and Mr. Padraic? I think there were because Mr. Padraic testified about the personal harm to him. There were also testimony and how it was affecting him. And as we said in the brief, the testimony established the significant harms in the loss of opportunities and income to this company during a time when it expected not to be less busy but a whole lot more busy given the economic issues going on in this country. Thank you. Thanks to both counsel for a fine argument. It's a very interesting, challenging case, and you've helped us in our duty here. So thank you both. The court is in recess. But first of all, we're going to submit this case that we just heard. And the court is in recess for the day.
judges: Alarcon, Smith, Hurwitz